UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

UNITED STATES OF AMERICA,

-against-

SHANDI ALEXANDER,

26 Cr. 410 (PAE)

Defendant.

---------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

TAMARA GIWA, ESQ.
Federal Defenders of New York
Attorney for Shandi Alexander
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8768
*By: Andrew John Dalack*
*Madeline Silva*

To: JAMES M. MCDONALD, ESQ.
United States Attorney
Southern District of New York
26 Federal Plaza, 37th Floor
New York, New York 10278
*Attn: AUSA Patrick Gallagher*

## Table of Contents

**I. Introduction** ........ 1

**II. On August 20, 2025, Shandi Alexander allegedly sent an intemperate and offensive direct Facebook message to a stranger, invoking the stranger's children to make a political point**. ........ 1

**III. The Indictment is defective and violates the First Amendment because the August 20, 2025, Facebook message is not a "true threat" to kill or injure anyone.** ........ 3

*A. Section 875(c) covers only genuine, credible threats to injure another person.* ........ 3

*B. The August 20, 2025, Facebook message is constitutionally protected speech—not a true threat.* ........ 6

*C. The Indictment also fails to allege the requisite mens rea element.* ........ 9

**IV. Conclusion** ........ 11

## I. Introduction

Through a single-count indictment, the government seeks to prosecute Shandi Alexander for constitutionally protected political speech that criticized the Trump administration's immigration policy but did not convey any serious expression of intent to do harm. The basis for this unconstitutional prosecution is a single, isolated Facebook message sent to the wife of an ICE Deportation Officer about her husband and children—a message that, while offensive and disparaging, was not threatening. In alleging otherwise, the government asserts that the message was a threat to "kill or injure" the ICE officer's children in violation of 18 U.S.C. § 875(c), which prohibits transmission of a "threat to injure the person of another." Because § 875(c) criminalizes speech, however, its application is constrained by the First Amendment, which permits a wide range of offensive and disparaging speech. Indeed, only so-called "true threats" falling outside the First Amendment's protection are punishable under this statute. By its plain terms, the Facebook message contains no such "true threat" to injure or kill anyone; accordingly, the Court must dismiss the Indictment for failure to state an offense under Federal Rule of Criminal Procedure ("Rule") 12(b)(3)(B)(v).

## II. On August 20, 2025, Shandi Alexander allegedly sent an intemperate and offensive direct Facebook message to a stranger, invoking the stranger's children to make a political point.

The week of August 10, 2025, Immigration and Customs Enforcement (ICE) arrested and detained a six-year-old girl when she arrived at 26 Federal Plaza with her mother and older brother for a scheduled ICE check-in. One week later, the

government deported the girl and her mother to Ecuador, leaving behind the older brother as well as two other siblings who had not been detained. ICE's detention of the young child, and its decision to separate a mother from her children, generated a flurry of reporting and criticism, including from Governor Kathy Hochul, who described the arrest as "cruel and unjust." On August 20, 2025, the New York Times reported on the story in an article titled "Deportation of 6-Year-Old Puts Spotlight on ICE's Detention of Families," which reported that ICE had detained about 50 children younger than 18 in the New York City area since January 2025, at least 38 of whom had been deported.[1]

That same day, the government alleges, Ms. Alexander sent a message via Facebook to the wife of an ICE Deportation Officer ("Complainant") that read, "Are these your kids you had with your Nazi murder rapist husband. They will get it too. Never think that his whiteness will protect them." *See* Complaint, ECF No. 1 ¶3. The message, which included a photograph of the Complainant's children that was publicly accessible on the Complainant's Facebook profile, echoed a refrain common in certain online ecosystems: that people's proximity to "whiteness" would not protect them in the long run from harsh governmental policies, like the detention of immigrant children.[2]

---

[1] Luis Ferre-Sadurni, *Deportation of 6-Year-Old Puts Spotlight on ICE's Detention of Families*, N.Y. Times, Aug. 20, 2025, available at https://www.nytimes.com/2025/08/20/nyregion/ice-6-year-old-nyc.html.

[2] *See, e.g.*, Tracee Michelle Porter, *Proximity to Whiteness Will Not Protect You*, KnockLA (June 20, 2025), available at https://knock-la.com/proximity-to-whiteness-will-not-protect-you/; Dr. Stacey Patton, *Covfefe Chronicles: Whiteness Won't Save You—Medicaid Cuts, RFK Jr., And the Death of White Supremacy*, NewsOne (June 13, 2025), available at https://newsone.com/6228676/op-ed-medicaid-cuts-rfk-jr-and-the-death-of-white-supremacy/; Rev. Dr. Susan K. Smith, *Your*

Notably, this was the one and only message Ms. Alexander allegedly sent the Complainant. *See* Transcript of Sept. 14, 2026 Arraignment at 8 (government describing the August 20, 2025, Facebook message as the "first and only communication" between Ms. Alexander and the Complainant).

Six months later, the government obtained a warrant to seize and search Ms. Alexander's cellphone, which was executed on February 24, 2026. And on April 9, 2026, nearly eight months after August 20, 2025, Ms. Alexander was arrested pursuant to her voluntary surrender, presented before the Honorable Stewart D. Aaron, and released on minimal conditions. On September 8, 2026, she was indicted for a single violation of 18 U.S.C. § 875(c) arising from her alleged transmission of the August 20, 2025, Facebook message.

## III. The Indictment is defective and violates the First Amendment because the August 20, 2025, Facebook message is not a "true threat" to kill or injure anyone.

The Indictment must be dismissed because the August 20, 2025, Facebook message is not a "true threat" within the scope of 18 U.S.C. § 875(c).

### *A. Section 875(c) covers only genuine, credible threats to injure another person.*

Section 875(c) prohibits the transmission in interstate commerce of "any communication containing any threat to kidnap any person or any threat to injure the person of another." Because § 875(c) criminalizes speech, its application is

*Whiteness Will Not Protect You*, Candid Observations (June 5, 2020), available at https://candidobservation.com/2020/06/05/your-whiteness-will-not-protect-you/; Divya Kumar, *Dear Brown Girl: Proximity-To-Whiteness Does Not Make You White*, available at https://www.embracerace.org/resources/dear-brown-girl-proximity-to-whiteness-does-not-make-you-white (discussing the "illusion of proximity-to-whiteness as protection from racism").

constrained by the First Amendment. *See Watts v. United States*, 394 U.S. 705, 707-708 (1969); *United States v. Kelner*, 534 F.2d 1020, 1026-27 (2d Cir. 1976). Only "true threats," which fall outside the First Amendment's protection, are punishable under this statute. *Id.*

The question of whether a particular statement crosses the line from protected speech to a true threat must be "consider[ed] . . . against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The First Amendment even protects harsh, offensive, and politically extreme speech, especially when directed toward public officials, including law enforcement. *See Watts*, 394 U.S. at 707-708 (defendant's statement at a political rally about having President Johnson in his sights if the defendant were drafted was political hyperbole, not a true threat); *City of Houston v. Hill*, 482 U.S. 451, 461-63 (1987) (holding that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" and explaining that "[s]peech is often provocative and challenging . . . [b]ut it is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest") (cleaned up). The First Amendment's far-reaching protections do not stop at speech intended to "trouble or annoy, or to make another

timid or fearful." *United States v. Dennis*, 132 F.4th 214 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 837 (2026). Nor may the government prohibit speech merely because some persons find it "offensive or disagreeable." *Id.* (citing *Virginia v. Black*, 538 U.S. 343, 358 (2003)).

The bar for establishing that a particular statement is a true threat is, therefore, a high one. Only those statements that constitute "'serious expressions'" conveying that a speaker means to 'commit an act of unlawful violence'" clear this high bar. *Counterman v. Colorado*, 600 U.S. 66, 74 (2023), *quoting Virginia v. Black*, 538 U.S. at 359. Even intemperate speech, including words that take a threatening form, may simply reflect heated rhetoric that does not rise to the level of a true threat. *United States v. Garnes*, 102 F.4th 628, 637 (2d Cir. 2024).

Although whether a particular statement constitutes a threat under § 875(c) is, in many cases, an issue of fact for the jury, *see United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994), courts appropriately dismiss § 875(c) charges under Rule 12(b)(3)(B) when "as a matter of law, the indictment fails to state an offense because the statements are not 'threats' and thus fall beyond the scope of 18 U.S.C. § 875(c)." *See United States v. Stock*, 728 F.3d 287, 293 (3d Cir. 2013); *see also, e.g.*, *United States v. Joudeh*, No. 26-CR-290, 2026 WL 2234671, at *2 (M.D. Fla. Aug. 1, 2026) (dismissing Indictment for failure to state an offense under Rule 12(b)(3)(B)(v) because "no reasonable jury" could consider the statement "I wish someone would in alive him" (which the government argued should be interpreted as "unalive") to be "a threat at all").

*B. The August 20, 2025, Facebook message is constitutionally protected speech—not a true threat.*

The government's entire case rests on a single Facebook message—one the government itself has described as the "first and only communication" between Ms. Alexander and the Complainant. That message included precisely the kind of harsh, offensive, and politically hyperbolic speech the First Amendment is designed to protect. It contained no threat, and certainly not the kind of "true threat" required for a criminal conviction under § 875(c).

The actual text of the Facebook message belies the government's claim that it contained a "threat[] to kill and injure [the Complainant's] children." Indictment, ECF No. 22. The message does neither. Rather, it describes the Complainant's husband, an ICE Deportation Officer, in insulting and provocative terms ("your Nazi murder rapist husband"), and expresses the belief that the husband's "whiteness will [not] protect" the Complainant's children from a nebulous and unspecified harm, suggesting that "[t]hey" will get "it" too. The phrase "They will get it too" cannot be severed from the immediately following sentence—"Never think that his whiteness will protect them"—which frames the message as a prediction that the Complainant's children will not be insulated from the harsh governmental policies associated with their father's work, rather than a threat that Ms. Alexander will inflict violence upon them. The message makes no reference to injuring anyone and has no affirmative language conveying a serious desire to injure anyone. The Facebook message is, therefore, "beyond the scope of 18 U.S.C. § 875(c)." *See Stock*, 728 F.3d at 293.

The Second Circuit's decision in *United States v. Dennis* illustrates why language that might appear ominous in isolation must be evaluated in the context of the complete communication. There, the Second Circuit reversed a cyberstalking conviction arising from 23 electronic communications the defendant sent to a former law partner, including "OK. Let's play" and "I will find you." 134 F.4th at 233-35. The government argued that the latter statement implicitly threatened violence, but the court rejected that interpretation because the complete message proposed meeting for breakfast and asked the recipient to save the defendant a seat. *Id.* at 234. Likewise, the invitation to "play" was followed by a proposal to discuss a professional dispute with others at a conference; the prospect of professional embarrassment did not establish a threat of physical harm. *Id*. Even viewing the evidence in the prosecution's favor, the Second Circuit held that the unwanted and distressing communications were insufficient to establish that the defendant conveyed, and intended to convey, true threats. *Id.* at 235.

The same contextual analysis is essential here. The government cannot establish a true threat merely by identifying an ominous possible meaning of a phrase divorced from the language that accompanies it. Just as the surrounding language in *Dennis* supplied a nonviolent meaning for statements that could otherwise sound menacing, the final sentence of Ms. Alexander's message supplies the interpretive context for the sentence preceding it. The question is not whether the message was offensive or unsettling, but whether, considered as a whole and in

context, it conveyed a serious threat of unlawful violence. The answer to that question is no.

The statements at issue in other purported threats cases make clear that the August 20, 2025, Facebook message is protected speech. Indeed, statements far more explicit than those at issue here have failed to clear the high "true threat" bar. For example, in *United States v. Bagdasarian*, the Ninth Circuit held that the defendant's statements, regarding then-presidential candidate Obama, "[r]e: Obama fk the niggar, he will have a 50 cal in the head soon" and "shoot the nig," did not constitute true threats. 652 F.3d 1113, 1115 (9th Cir. 2011). With respect to the first statement, the court held that it was a "prediction" and "convey[ed] no explicit or implicit threat on the part of [the defendant] that he himself [would] kill or injure Obama." *Id.* at 1119. With respect to the second statement, the court explained that it did not "impart a threat" but was "instead an imperative intended to encourage others to take violent action, if not simply an expression of rage or frustration." *Id.* Notwithstanding both statements being "alarming and dangerous," the court explained that "predictions or exhortations to others to injure or kill" are not criminalized and concluded that a "rational trier of fact" could not "reasonably have found that either statement . . . expresses a threat." *Id.*

Likewise, in *United States v. White*, the Fourth Circuit affirmed a district court's judgment of acquittal on a § 875(c) count premised on communications that "at most conveyed a *serious desire*" that a named individual be harmed but did not "convey a *serious expression of intent* to do harm." 670 F.3d 498, 514 (4th Cir. 2012).

In that case, the defendant posted two messages on a website regarding Canadian human rights lawyer Richard Warman; the first referenced a recent firebombing of a Canadian civil rights activist's house and stated "Good. Now someone do it to Warman." *Id.* at 513. The second indicated that Warman "should be drug out into the street and shot." *Id.*

The August 20, 2025, Facebook message pales in comparison to the explicitly violent exhortations at issue in *Bagdasarian* and *White*, but the reasoning in both cases is instructive here. As discussed above, the Facebook message includes no explicit threat. And even if the message could be read to predict, or express hope, that injury will befall the Complainant's children—and such a reading is by no means obvious, given the message's vague and non-detailed language—a prediction or expression of hope is not a threat and cannot support a conviction under § 875(c).

For the foregoing reasons, no reasonable juror could conclude that the message is a true threat within the scope of § 875(c). Accordingly, because it is clear from the plain text of the charged communication that it contains no threat to injure anyone, dismissal under Rule 12(b)(3)(B) is required.

*C. The Indictment also fails to allege the requisite mens rea element.*

The Indictment must be dismissed because it also fails to allege that Ms. Alexander acted with the requisite *mens rea*. The First Amendment requires proof in a criminal action regarding a true threat that the defendant had some subjective understanding of the threatening nature of his or her statements. *Counterman*, 600 U.S. at 69; *see also Elonis v. United States*, 575 U.S. 723, 741 (2015) (holding that

negligence as to whether a statement will be viewed as threatening "is not sufficient to support a conviction under Section 875(c)").

The Indictment here fails to allege that Ms. Alexander had any subjective understanding that the August 20, 2025, Facebook message could be perceived as threatening in nature. The Indictment alleges, in full:

> On or about August 20, 2025, in the Southern District of New York and elsewhere, SHANDI ALEXANDER, the defendant, knowingly transmitted in interstate and foreign commerce communications containing threats to injure the person of another, to wit, ALEXANDER sent threatening electronic messages from New York, New York over a particular social media application to another individual ("Victim-1") outside of New York State, in which ALEXANDER threatened to kill and injure Victim-1's children.

Although it alleges knowing transmission of the communication itself, it is silent as to *mens rea* with respect to the threatening nature of that communication, which is a separate element. *See Counterman*, 600 U.S. at 72 n.2 (explaining "the difference between awareness of a communication's contents and awareness of its threatening nature"). The Indictment therefore fails to "set forth each element of the crime it charges," and accordingly must be dismissed. *See Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) (indictment must set forth each element of crime charged); *United States v. Martinez*, 800 F.3d 1293, 1294 (11th Cir. 2015) (vacating defendant's § 875(c) conviction and sentence and remanding to the district court with instructions to dismiss the indictment because "it failed to allege [that the defendant] subjectively intended to convey a threat to injure others").

## IV. Conclusion

The government seeks to punish Ms. Alexander for a single Facebook message to a stranger—a message that, however offensive, contained no true threat to injure or kill anyone. The First Amendment forbids this prosecution. Accordingly, Ms. Alexander respectfully requests that the Court dismiss the Indictment. We also respectfully request oral argument.

Dated: New York, NY
October 7, 2026

Respectfully submitted,

*/s/Madeline Silva*

Andrew John Dalack, Esq.
Federal Defenders of New York
52 Duane Street - 10th Floor
New York, New York 10007
Telephone: (212) 417-8768
Andrew_Dalack@fd.org

Madeline Silva, Esq.
Debevoise & Plimpton LLP
66 Hudson Blvd.
New York, New York 10001
Telephone: (212) 909-6000
mmsilva@debevoise.com

*Counsel for Shandi Alexander*