UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*-v.-*<br><br>SHANDI ALEXANDER,<br><br>Defendant. | 26 Cr. 410 (PAE) |

**THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

JAMES M. MCDONALD
United States Attorney
Southern District of New York

Patrick J. Gallagher
Assistant United States Attorney
- *Of Counsel* -

## TABLE OF CONTENTS


BACKGROUND ..... 3

I. Factual Background ..... 3

II. Procedural History ..... 3

ARGUMENT ..... 4

I. The Indictment Is Sufficient And States a Violation of 18 U.S.C. § 875(c) ..... 4

II. The Indictment Alleges a "True Threat" and Does Not Run Afoul of the First Amendment ..... 8

CONCLUSION ..... 15

The Government respectfully writes in response to the defendant Shandi Alexander's motion to dismiss the Indictment (Dkt. 29). For the reasons that follow, that motion should be denied.

## BACKGROUND

### I. Factual Background

On or about August 20, 2025, an Immigration and Customs Enforcement ("ICE") officer's identity was "doxxed," meaning that personal information about that officer was shared publicly on the Internet, including his spouse's identity. On or about that same day, the defendant located the Facebook profile of the officer's spouse ("Victim-1"). The defendant did not know Victim-1 and had never communicated with Victim-1 in the past.

After locating Victim-1's Facebook profile, the defendant sent private, direct messages to Victim-1 that only Victim-1, and not the public, could view. The first message stated, "Are these your kids you had with your Nazi murder rapist husband. They will get it too. Never think that his whiteness will protect them." (Dkt. 1 ¶ 4.b.) The second message consisted of a photograph of Victim-1's and the officer's children. (*Id.*) A screenshot of these messages is attached as Exhibit A.[1]

### II. Procedural History

On April 1, 2026, the defendant was charged by complaint (the "Complaint") with sending threatening interstate communications, in violation of Title 18, United States Code, Section 875(c). (Dkt. 1.) The defendant was arrested on April 9, 2026, presented that same day, and released on conditions.

[1] The Government respectfully submits an unredacted copy of the screenshot under seal.

On September 8, 2026, a grand jury in this District returned a single count indictment (the "Indictment") charging the defendant with the same count as alleged in the Complaint. (Dkt. 22.) On October 7, 2026, the defendant moved to dismiss the Indictment on two grounds: (1) that the electronic messages are constitutionally protected speech; and (2) that the Indictment fails to allege the requisite *mens rea*. (*See* Dkt. 30 ("Mot.").) Trial is scheduled to begin on January 19, 2027.

## ARGUMENT

In seeking to dismiss the Indictment, the defendant wrongly asserts that, as a matter of law, her threatening statements to Victim-1 (including pictures of Victim-1's children) were constitutionally protected speech. The defendant further claims that the Indictment insufficiently alleges the *mens rea* required under Section 875(c), despite agreeing that the Indictment itself tracks the statutory language. As explained below, the Indictment properly alleges a violation of Section 875(c), and the defendant's contention that her messages in context cannot constitute a "true threat" is an issue for the jury. Because the Indictment alleges a true threat, the First Amendment does not protect the communications at issue as a matter of law.

### I. The Indictment Is Sufficient And States a Violation of 18 U.S.C. § 875(c)

#### A. Applicable Law

Pursuant to Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[T]o satisfy the pleading requirements of Rule 7(c)(1), an indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013); *see also United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008) ("Typically, to state an offense, an indictment need only track the language of the statute and, if necessary to

apprise the defendant of the nature of the accusation against him, state time and place in approximate terms.") (quoting *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002)); *United States v. Telfair*, 19 Cr. 270 (ILG), 2020 WL 550646, at *2 (E.D.N.Y. Feb. 3, 2020) ("An indictment withstands dismissal so long as it tracks the language of the statute charged."). An indictment is therefore sufficient so long as it "first, contains the element of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

Title 18, United States Code, Section 875(c) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be [guilty of a crime]." 18 U.S.C. § 875(c). To establish a violation of 18 U.S.C. § 875(c), the Government must prove beyond a reasonable doubt the following three elements:

> (1) the defendant intentionally transmitted a communication in interstate commerce, (2) the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury (*i.e.*, the objective component), and (3) the defendant transmit[ted] [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat (i.e., the subjective component).

*United States v. Lemke*, 21 Cr. 100 (AKH), 2021 WL 3195470, at *2 (S.D.N.Y. July 28, 2021) (citing *Elonis v. United States*, 575 U.S. 723 (2015)). "A Section 875(c) indictment must therefore include an allegation as to the Defendant's subjective intent or contain sufficient factual

information for the subject[ive] intent to be inferred." *Id.*[2]

### B. Discussion

The defendant's argument, barely over a page, quotes the relevant language of the Indictment, which itself concedes that the Indictment "track[s] the language of the statute," contains the elements of an 18 U.S.C. § 875(c) charge, and provides factual information about the specific nature of the threat. *Frias*, 521 F.3d at 235. Here, the Indictment states:

> On or about August 20, 2025, in the Southern District of New York and elsewhere, SHANDI ALEXANDER, the defendant, knowingly transmitted in interstate and foreign commerce communications containing threats to injure the person of another, to wit, ALEXANDER sent threatening electronic messages from New York, New York over a particular social media application to another individual ("Victim-1") outside of New York State, in which ALEXANDER threatened to kill and injure Victim-1's children.

(Dkt. 22 at 1.)

No more under Rule 7 is required and that defeats the motion; as the ensuing discussion makes clear, the defendant's challenges are at bottom matters for the jury. The defendant argues that the Indictment is insufficient, however, because it fails to allege "the requisite *mens rea*." (Mot. at 9-10.) Specifically, the defendant claims that the Indictment "fails to allege that [the defendant] had any subjective understanding that the August 20, 2025 Facebook message could

---

[2] In *Elonis*, the Supreme Court clarified that an 18 U.S.C. § 875(c) conviction requires the Government to prove beyond a reasonable doubt that "the defendant transmit[ed] a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," but left open the question of whether a recklessness *mens rea* suffices. 575 U.S. at 740. The Supreme Court has since clarified, in the context of an analogous statute, that the Government may prove that a defendant made a "true threat" if the defendant "acted with at least 'reckless' state of mind, *i.e.*, awareness 'that others could regard his statements as threatening violence and delivers them anyway." *United States v. Dennis*, 132 F.4th 214, 229-30 (2nd Cir. 2025) (quoting *Counterman v. Colorado*, 600 U.S. 66, 79 (2023)).

be perceived as threatening in nature." (*Id.* at 10.) The defendant is wrong, and the one out-of-circuit case the defendant cites is inapposite. Courts routinely hold that indictments charging 18 U.S.C. § 875(c) that contain nearly identical language are sufficient.

For example, in *Lemke*, Judge Hellerstein held that an indictment nearly identical to the one here was sufficient. 2021 WL 3195470, at *2. The *Lemke* indictment charged three counts of 18 U.S.C. § 875(c). *See* Dkt. 28, S2 Indictment, *United States v. Lemke*, 21 Cr. 100 (S.D.N.Y. July 21, 2021). Each count provided a date and place for the charged threat and alleged that "the defendant, knowingly and intentionally transmitted in interstate and foreign commerce a communication containing a threat to kidnap a person and injure the person of another." *Id.* Each count also included a "to wit" clause that specified the factual the nature of each threat. *See id.* Judge Hellerstein held that because each count stated that the defendant "'knowingly and intentionally' transmitted a communication containing a threat to kidnap a person," the indictment "therefore include[d] an allegation of [the defendant's] subjective intent to communicate a threat." *Lemke*, 2021 WL 3195470, at *2. Judge Hellerstein further noted the indictment "provide[d] further factual details from which [the defendant's] subjective intent to threaten the [v]ictims can be inferred." *Id.*; *see also United States v. Khan*, 937 F.3d 1042, 1049-50 (7th Cir. 2019) (finding 18 U.S.C. § 875(c) indictment sufficient where it alleged that the defendant "knowingly" sent threatening communications and contained facts regarding the contents of the threats made); *Telfair*, 2020 WL550646, at *2 (denying motion to dismiss an 18 U.S.C. § 875(c) indictment because "the indictment track[ed] the language of § 875(c), including the time and place of the offending conduct" and thus "the indictment fairly inform[ed] [the defendant] of the alleged crime").

The defendant's reliance on *United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015) is misplaced. There, the indictment alleged: "On or about November 10, 2010, in Broward County, in the Southern District of Florida, and elsewhere [the defendant] did knowingly transmit in interstate commerce a communication, that is an email form response, to WFTL Radio, which communication contained a threat to injure the person of another, in violation of Tile 18, United States Code, Section 875(c)." *Id.* at 1294. On remand after *Elonis*, the Eleventh Circuit held that indictment was insufficient because it "fail[ed] to allege [the defendant's] *mens rea* or facts from which her intent can be inferred, with regard to the threatening nature of her e-mail." *Id.* at 1295. Instead, the indictment alleged "only that a reasonable person would regard [the defendant's] communications as a threat," which the parties agreed was insufficient after *Elonis*. *Id.* at 1295 & n.1. But that unremarkable proposition does not apply here, where the Indictment alleges facts from which the defendant's intent can be inferred, specifically, that the defendant "sent threatening electronic messages . . . to another individual . . . in which [the defendant] threatened to kill and injure Victim-1's children." (Dkt. 22 at 1.)

In short, the Indictment alleges all elements of an 18 U.S.C. § 875(c) offense, tracks the language of the statute, and fairly informs the defendant of the charge against her. *Stringer*, 730 F.3d at 124. It is therefore sufficient.

## II. The Indictment Alleges a "True Threat" and Does Not Run Afoul of the First Amendment

The defendant further argues that the targeted messages that the defendant sent to Victim-1 are constitutionally protected speech and not a "true threat." (Mot. at 6-9.) The Court can easily dispense with this argument. The Indictment properly alleges a true threat falling outside the bounds of the First Amendment, and the question of whether the defendant's statements were, in

fact, a true threat, is one for the jury.

**A. Applicable Law**

"True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). A "true threat" of violence is an "unprotected category" of speech and is distinguishable from "jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* (citing *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam)). Prohibiting this type of speech "'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Virginia v. Black*, 538 U.S. 343, 359 (2003) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)).

For a communication to be a "true threat," "[t]he speaker need not actually intend to carry out the threat." *Id.*; *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013) (holding true threats may be prohibited "even where the speaker has no intention of carrying them out"). True threats can be "both conditional and inexplicit." *United States v. Turner*, 720 F.3d 411, 423-24 (2d Cir. 2013). In other words, "to be a 'true threat,' the statement, 'when taken in context,' must convey a real possibility that violence will follow." *United States v. Burger*, 170 F.4th 395, 402 (5th Cir. Mar. 19, 2026) (citing *Counterman*, 600 U.S. at 74). Accordingly, "the existence of a true threat depends on what the statement conveys to the person to whom it is directed, rather than on the mental state of the speaker." *United States v. Gaines*, 102 F.4th 628, 637 (2d Cir. 2024). Additionally, as noted above, Section 875(c) contains a subjective mental state requirement that, at a minimum, requires the defendant to be acting recklessly. *Id.* (explaining under *Counterman* that "the minimum *mens rea* element required by the First Amendment in threat cases is

recklessness"). Against that backdrop, the Government here must show that the defendant's statements "would, objectively, convey to the listener that the threatening language represented a genuine threat, and that in making [her] statements, [the defendant] "consciously disregarded a substantial risk that [her] communications would be viewed as threatening violence" to Victim-1. *Id.*

The Second Circuit has recognized that the "the true threat standard spelled out in our cases constrains the role of judges and instead relies upon the sensibilities of ordinary people." *United States v. Hunt*, 82 F.4th 129, 136 (2d Cir. 2023) ("In sum, the court is no better equipped than the jury—and is arguably less equipped—to answer whether a statement is a true threat."). Although "[a] few cases may be so clear . . . that they can be resolved as a matter of law," *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013), "whether a given writing constitutes a threat is an issue of fact for the trial jury." *United States v. Turner*, 720 F.3d 411, 419 (2d Cir. 2013); *United States v. Wright-Darrisaw*, 781 F.3d 35, 39 (2d Cir. 2015) ("[W]hether words used are a true threat is generally best left to the triers of fact.") (internal citations omitted); *see also United States v. Malik*, 16 F.3d 45, 51 (2d Cir. 1994) (explaining that "existence *vel non* of a "true threat" is a question generally best left to a jury"). And because the existence of a true threat necessarily falls outside the First Amendment's protections, the Second Circuit has held "that the true threat determination involves no legal principles warranting independent review of the jury's conclusion," which "aligns with our well-established view that whether words used are a true threat is a question of fact for the jury to which we defer." *Hunt*, 82 F.4th at 137 (internal quotation marks omitted).

Against that backdrop, courts routinely deny motions to dismiss Section 875(c) indictments in favor of leaving the question of whether a specific communication was a "true threat" for the

jury and therefore outside the scope of the First Amendment. *See, e.g.*, *Telfair*, 2020 WL 550646, at *2 ("A jury may reasonably find that [the defendant] was not merely 'ranting and raving,' but that she threatened Jane Doe in violation of § 875(c)"); *United States v. Spear*, 20 Cr. 51 (WKS), 2021 WL 794784, at *3 (D. Vt. Mar. 2, 2021) (agreeing with the Government that the defendant's motion to dismiss was "really a question of whether the government has sufficient evidence to show that the threat was directed at the [the victim], and that such a question is meant for the trier of fact to answer"); *United States v. Holmes*, 26 Cr. 106 (VMK), 2026 WL 3181520, at *4 (N.D. Ill. Oct. 23, 2026) ("[The defendant] is free to explain to a jury that his post was mere political commentary; but at this stage of the proceedings, the Court finds that the Government has sufficiently alleged th[e] statement is a serious expression[] conveying that a speaker means to commit an act of unlawful violence.") (internal quotation marks omitted); *United States v. Santiago*, 26 Cr. 57 (CSM), 2026 WL 3122152, at *4 (E.D. Ky. Oct. 19, 2026) ("A reasonable jury could find [the defendant's] statements to be true threats, and so the matter must be presented to a jury."); *see also Burger*, 170 F.4th at 403 (reversing a district court's dismissal of an indictment charging the defendant with two counts of violating 18 U.S.C. § 875(c) and noting that "[w]hether a statement is a true threat is generally a question for the jury"); *Turner*, 720 F.3d at 426 (quoting district court's jury charge that explained "[t]he First Amendment protects vehement, scathing, and offensive criticism of public officials, including United States judges. Should you find that the defendant's statements for which he is charged were no more than mere political hyperbole then you may be justified in finding that no threat was in fact made").

**B. Discussion**

The defendant argues that the communications at issue did not amount to a "true threat" and thus the Court should hold that the messages were constitutionally protected speech. While

"intemperate," the defendant claims that, by applying a "contextual analysis," her speech was "harsh, offensive, and politically hyperbolic speech the First Amendment is designed to protect," which "echoed a refrain common in certain online ecosystems" regarding current immigration policies. (Mot. at 2, 6.) The defendant frames the communications at issue as describing Victim-1's husband "in insulting and provocative terms" and "express[ing] a belief" that Victim-1's husband's "whiteness will [not] protect" Victim's children "from a nebulous and unspecified harm." (Mot. at 6.) The defendant also claims that the messages were "a prediction that [Victim-1's] children will not be insulated from the harsh governmental policies associated with their father's work." (*Id.*) The defendant also acknowledges that the text she sent was accompanied by a "photograph of [Victim-1's] children," and notes that it was "publicly accessible on [Victim-1's] Facebook profile." (*Id.* at 2.)

First, and dispositive, any argument that the defendant's direct messages to Victim-1, taken in context, did not constitute a true threat is squarely a question for the jury. And any dispute about how the jury should be instructed on the standard for a true threat or the intent requirement under Section 875(c) can be resolved by the Court pre-trial when the parties submit requests to charge.

While the Court need go no further at this stage, the Government notes that the defendant's arguments invite the Court to step into the jury's role by weighing competing interpretations of her messages to Victim-1. (*See* Mot. at 6.) But the same "contextual analysis" is what the jury would be instructed in the first instance. *See Turner*, 720 F.3d at 426 (quoting district court's jury charge that explained, among other things, that "[i]n determining whether the charged statements constitute a threat, you should consider the context in which they were made"). Indeed, "[w]ritten words or phrases and their reasonable connotations take their character as threatening or harmless

from the context in which they are used, measured by the common experience of the society in which they are published." *Id.* The defendant is, of course, free to argue to the jury that there was a nonviolent political meaning for her messages, just as the Government will argue the context of the defendant targeting Victim-1 after Victim-1 and her ICE officer husband were doxxed online, seeking out pictures of Victim-1's children, and sending private messages to Victim-1 with a picture of her children and saying "they will get it too."

The defendant's First Amendment challenge is really an argument that her conduct was not a true threat and did not violate Section 875(c). But a motion to dismiss "is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence." *Stock*, 728 F.3d at 292 n.4. The Fifth Circuit recently reversed a district court's dismissal of Section 875(c) indictment, in part, because "the district court resolved contested factual issues in concluding that no rational juror could find that [the defendant] was subjectively aware of the threatening nature of his communications." *Burger*, 170 F.4th at 404 (explaining that in a prior case, that court "expressly disapproved of a district court's considering evidence tending to rebut an allegation of willfulness, a subjective mental state, at the motion-to-dismiss stage"); *see also United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) (Gorsuch, *J.*) ("To warrant dismissal, it must be clear from the parties' *agreed* representations about the facts surrounding the commission of the alleged offense that a trial of the general issue would serve no purpose."). And while the defendant tries to repackage these evidentiary claims as legal argument, this Court should reject the defendant's narrow view of the communications at issue. *See Turner*, 720 F.3d at 422 ("[R]igid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render [an analogous threats statute] powerless against the ingenuity of

threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat.") (quoting *Malik*, 16 F.3d at 49). Nor is the defendant's citation to *United States v. Joudeh* at all applicable, as that case involved "a mere wish that 'someone' would 'in alive' an unnamed 'him,'" comprising "a vague desire that someone was no longer alive." 839 F. Supp. 3d 1343, 1348 (M.D. Fl. 2026)., The Court should allow the question of whether the communications at issue constituted a "true threat" to go to the jury.

Finally, the defendant's remaining citations prove the Government's point because they involved challenges to the sufficiency of the evidence after trial—not a dismissal of a threats case on the pleadings. In *United States v. White*, the Fourth Circuit explained that "[t]he question of whether [the defendant's] communications . . . were true threats . . . is a jury question" in affirming the district court's granting of the defendant's Rule 29 motion for one Section 875(c) count and its denial of the defendant's Rule 29 motion for three other Section 875(c) counts. 670 F.3d 498, 512 (4th Cir. 2012); *see also United States v. Bagdasarian*, 652 F.3d 1113, (9th Cir. 2011) (statements on message board containing "predictions of exhortations to others to injure or kill the President" not prescribed by threats statute and a rational trier of fact could not have reasonably found that "either statement, on its face or taken in context, expresses a threat against Obama by [the defendant]"). So too with *United States v. Dennis*, which reversed one of three cyberstalking counts of conviction because the relevant communication, "read in its entirety, simply propose[d] meeting for breakfast." 132 F.4th 214, 234 (2d Cir. 2025). But putting aside those factual distinctions, which arose in Rule 29 sufficiency challenges, they hardly support the defendant's claim that her indictment should be dismissed on First Amendment grounds. The defendant here told Victim-1 that Victim-1's children would "get it too" after referring to Victim-1's husband as

a "Nazi," a "murder[er]," and a "rapist." (Ex. A.) She also told Victim-1 that Victim-1's children's "whiteness" would not "protect them" and then sent a photograph of Victim-1's children, all in targeted, direct communications. The "sensibilities of ordinary people"—*i.e.*, the jury—are best equipped to evaluate whether such statements are true threats. *Hunt*, 82 F.4th at 136 (explaining that "the common law does not assign[] an especially broad role to the judge to answer the operative question in this case"). Indeed, "the true threat determination will usually hinge on the objective assessment of a reasonable person, and thus requires only ordinary principles of logic and common experience rather than legal judgment." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's motion to dismiss.

Dated: New York, New York
October 28, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: *Patrick J. Gallagher*
Patrick J. Gallagher
Assistant United States Attorney
(212) 637-2251