UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

SHANDI ALEXANDER,

Defendant.

26 Cr. 410 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Defendant Shandi Alexander is charged with transmitting, in interstate commerce, a threat to injure the person of another, in violation of 18 U.S.C. § 875(c). She now moves to dismiss the Indictment for failure to state an offense, under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). She argues, first, that the conduct on which the charge is based consists of constitutionally protected speech outside the scope of § 875(c), and second, that the Indictment does not allege that Alexander acted with the requisite *mens rea*.

For the reasons that follow, the Court denies the motion.

## I. Background

On April 1, 2026, William Jambois, a special agent with the United States Department of Homeland Security, swore out the Complaint in this case. Dkt. 1 ("Compl."). It alleges in pertinent part:

> [O]n or about August 20, 2025, [Alexander] sent threatening electronic messages via a social media application . . . to the spouse ("Victim-1") of a U.S. Immigrations [sic] and Customs Enforcement ("ICE") deportation officer ("Officer-1"). The first message stated, "Are these your kids you had with your Nazi murder rapist husband. They will get it too. Never think that his whiteness will protect them." The second message consisted of a photograph of Victim-1's and Officer-1's children.

*Id.* ¶ 3. That day, a warrant for Alexander's arrest issued. Dkt. 2. On April 9, 2026, Alexander was arrested, presented, and released on conditions. Dkt. 4.

On September 8, 2026, a grand jury returned the one-count Indictment. Dkt. 22. It charges as follows:

> On or about August 20, 2025, in the Southern District of New York and elsewhere, SHANDI ALEXANDER, the defendant, knowingly transmitted in interstate and foreign commerce communications containing threats to injure the person of another, to wit, ALEXANDER sent threatening electronic messages from New York, New York over a particular social media application to another individual ("Victim-1") outside of New York State, in which ALEXANDER threatened to kill and injure Victim-1's children.

*Id.* On October 7, 2026, Alexander moved to dismiss the Indictment for failure to state an offense. Dkt. 29; *see also* Dkt. 30 ("Mot."). On October 28, 2026, the Government opposed. Dkt. 31 ("Opp'n"). On November 5, 2026, the defense replied. Dkt. 34 ("Reply").

## II. Applicable Legal Standards

"The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (cleaned up); *see also United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018) ("As this Court has repeatedly emphasized, the exercise of a court's supervisory authority to dismiss an indictment is a 'drastic remedy' that should be utilized with caution and only in extreme cases." (citation omitted)).

On a motion to dismiss an indictment, the Court accepts as true the indictment's factual allegations. *See United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999); *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016). The Court is ordinarily not to "consider the sufficiency of the evidence that the government is likely to offer at trial." *United States v. Grasso*, 585 F. Supp. 3d 484, 488 (S.D.N.Y. 2022) (citing *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009)). "There is an extraordinarily narrow exception to the rule that a court cannot

test the sufficiency of the government's evidence on a pretrial motion to dismiss," where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *United States v. Phillips*, 690 F. Supp. 3d 268, 278 (S.D.N.Y. 2023) (cleaned up) (first quoting *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018); and then quoting *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021)).[1]

## III. Discussion

### A. Alexander's First Amendment Challenge

Section 875(c) makes it a crime to transmit in interstate commerce "any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c). Because § 875(c) criminalizes speech, its application is circumscribed by the First Amendment. Only "true threats" are outside the First Amendment's scope and thus are punishable under § 875(c). *See United States v. Sovie*, 122 F.3d 122, 125 (2d Cir. 1997) ("[T]o support a [§ 875(c)] conviction, the government must show a 'true threat.'"); *United States v. Segui*, No. 19 Cr. 188, 2019 WL 8587291, at *11 (E.D.N.Y. Dec. 2, 2019) ("[U]nder § 875(c), [the defendant] can only be convicted of sending a true threat.").

The Supreme Court has described "true threats" of violence unprotected by the First Amendment as "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 143 S. Ct. 2106, 2114 (2023) (alteration in original) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "True threats" are distinguished from "jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow." *Id.* (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969)).

[1] The Government has not made such a proffer in this case.

There are both objective and subjective components to the showing required to establish a "true threat." The "true threat" inquiry is objective in that "[t]he existence of a true threat depends on what the statement conveys to the person to whom it is directed, rather than on the mental state of the speaker." *United States v. Garnes*, 102 F.4th 628, 637 (2d Cir. 2024). To that end, the Government must establish that "the statements [a defendant] made would, objectively, convey to the listener that the threatening language represented a genuine threat." *Id.* The inquiry is subjective in that its required mental state of recklessness requires the Government to establish that in making the statement or statements, the defendant "consciously disregarded a substantial risk that [such] would be viewed as threatening violence." *Id.* (quoting *Counterman*, 143 S. Ct. at 2112).

Here, the electronic message Alexander is charged with sending the spouse of an ICE officer ("the victim") consisted of (1) the words, "Are these your kids you had with your Nazi murder rapist husband. They will get it too. Never think that his whiteness will protect them," and (2) a photograph of the couple's three children. Compl. ¶ 3. In moving to dismiss, Alexander argues that the message was "constitutionally protected political speech that criticized the Trump administration's immigration policy but did not convey any serious expression of intent to do harm." Mot. at 3. She argues that the message, "[b]y its plain terms," does not contain a "true threat." *Id.* The Government counters that the Indictment alleges a true threat in that it charges that Alexander in the message "threatened to kill and injure Victim-1's children." Opp'n at 6. To the extent Alexander disputes that the message contained such a threat, it argues, that is a question of fact for the jury. *Id.* at 10–12.

The Government is correct. Whether Alexander's alleged message to the victim contains a "true threat" to injure is a question for the jury. There is no basis for the Court to determine that the conduct, necessarily, cannot so qualify, and to dismiss the Indictment on that ground.

"[T]he true threat standard . . . constrains the role of judges and instead relies upon the sensibilities of ordinary people." *United States v. Hunt*, 82 F.4th 129, 136 (2d Cir. 2023). Generally, "whether words used are a true threat' is 'a question of fact' for the jury." *Id.* at 136–37 (quoting *United States v. Amor*, 24 F.3d 432, 436 (2d Cir. 1994)). That principle reflects that "the court is no better equipped than the jury—and is arguably less equipped—to answer whether a statement is a true threat." *Id.* at 136. In a rare case, a court may conclude "as a matter of law" that "no reasonable jury could find that the alleged communication constitutes a threat or a true threat." *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013). But "[m]ost cases are within a broad expanse of varying fact patterns which may not be resolved as a matter of law, but should be left to a jury." *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982).

In assessing whether Alexander's electronic message to the victim falls within the narrow set of fact patterns that can be resolved before trial as a matter of law, the Court considers the text of that message and the attached photograph of the victim's children.[2] In arguing that this message could not be a true threat, Alexander posits a non-threatening construction. She urges

---

[2] At trial, the parties will be at liberty to offer additional admissible evidence as to the context of this message, which may inform a jury's assessment of whether it was a true threat. *See Stock*, 728 F.3d at 300. In this case, the Government proffered at a pretrial conference and in briefing that the ICE official to whom the victim is married was doxxed—*i.e.*, his personal information was publicly shared—roughly contemporaneously with the charged communication. *See* Opp'n at 3. The defense, meanwhile, notes that the communication occurred on the same day that the *New York Times* published an article documenting the separation of immigrant families, and in particular ICE's deportation of a six-year-old girl and her mother. *See* Mot. at 1–2. For purposes of this decision, the Court does not consider these proffers, but is mindful that evidence speaking to Alexander's motivations could be received and could bear on the "true threat" inquiry.

that the key phrase ("[t]hey will get it too"), read in light of the next sentence ("[n]ever think that his whiteness will protect them"), is not a threat to injure the children. Mot. at 6. Rather, she argues, the message conveys that the "children will not be insulated from the harsh governmental policies associated with their father's work." *Id.* Alexander argues that the message "contained no threat," *id.*, in that it was "so clearly non-threatening that no reasonable jury could find otherwise." *United States v. Joudeh*, 839 F. Supp. 3d 1343, 1349 (M.D. Fla. 2026) (citation omitted). She likens her case to *Joudeh*, *supra*, in which an online communication was held, on a motion to dismiss, necessarily to fall short of a true threat.

*Joudeh* is readily distinguished. There, the defendant was charged with violating § 875(c) for transmitting an "online comment" that read, "I wish someone would in alive him." *Id.* at 1347. On the motion to dismiss, the district court credited (as the Government argued) that "in alive" was a mistype of "unalive," a euphemism for "kill." *Id.* The court nonetheless found that "no reasonable jury could consider this broad, non-detailed wish to be a threat." *Id.* Instead, it held, the communication reflected "a vague desire that someone was no longer alive." *Id.* at 1348. The court therefore dismissed the indictment on the ground that the statement did "not express an intent to commit harm in the past, present, or future, and there [was] no other context to explain how this statement could possibly be threatening"—it was "simply not a threat." *Id.* at 1350. In recognizing that a message conveying merely "a vague desire" that harm would befall someone was not a true threat, *id.* at 1348, the court tracked the Second Circuit's case law in this area, which likewise distinguishes expressions of "abstract desire" from "true threats." *United States v. Turner*, 720 F.3d 411, 423 (2d Cir. 2013) ("Turner did not merely advocate law violation or express an abstract desire for the deaths of Judges Easterbrook, Bauer, and Posner.").

That principle, however, does not avail Alexander. The message she sent the victim—that "[t]hey will get it too"—is instead like the statements held in *Turner* to qualify as "true threats" because they expressed an intent to commit harm. These were that certain federal judges "deserve to be killed"; that "[i]f they are allowed to get away with this by surviving, other Judges will act the same way"; and that "[t]hese Judges deserve to be made such an example of as to send a message to the entire judiciary: Obey the Constitution or die." *Id.* at 422. Significant, too, Alexander attached a photograph of the victim's minor children, establishing her knowledge of their identity, and she sent the message directly to the victim, rather than posting it in a forum where the victim might not alert to it. On the basis of limited materials at hand—the message and attachment—a reasonable jury could find Alexander's statement to the victim that her children "will get it" to express an intent to do physical harm to them, not a mere "vague" desire that the children be injured, and thus to "constitute[] a threat or a true threat." *Stock*, 728 F.3d at 298.

Alexander cites no other case in which a court dismissed a § 875(c) indictment pretrial on the ground that the message at issue, as a matter of law, was not a "true threat." Instead, drawing on cases resolving appellate challenges to the sufficiency of evidence supporting convictions under the statute, she argues that her message "expresses no serious intent to commit an act of unlawful violence." Reply at 2; *see also* Mot. at 8–9. Those cases are distinguishable at the outset in that there is not yet a record on which to assess evidentiary sufficiency. Moreover, contrary to Alexander's premise, § 875(c) does not require that the defendant "specifically intend to carry out the threat." *Turner*, 720 F.3d at 423; *see also Black*, 538 U.S. at 359–60 ("The speaker need not actually intend to carry out the threat."). And to the extent that Alexander defends that the statement was too euphemistic and/or insufficiently specific to support a

conviction, the case law is against her. *See, e.g.*, *Turner*, 720 F.3d at 422, 424 (upholding conviction on "true threat" challenge where statements were "passive," "conditional and inexplicit"); *United States v. Shoulberg*, 895 F.2d 882, 886 (2d Cir. 1990) (affirming conviction and sentence enhancement against "true threat" challenge where statement "implied that he would use violence" and "carried overtones of imminent threat"); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 513 (S.D.N.Y. 2021) ("true threats" "need not be communicated explicitly or directly," and the threatened injury "need not be physical or violent").

In casting her message as protected speech, and as such not a "true threat," Alexander cites two appellate cases in which § 875(c) convictions were overturned on this ground. Mot. at 8–9. Each, however, arose on review of a trial conviction, and hence is inapposite. In *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011), the Ninth Circuit considered a statement that then–presidential candidate Barack Obama "will have a 50 cal in the head soon" and exhorting others to "shoot" him. *Id.* at 1115. It held there was "insufficient evidence that either statement constituted a threat or would be construed by a reasonable person as a genuine threat by Bagdasarian against Obama." *Id.* at 1120. It held that "the prosecution failed to present sufficient evidence to establish beyond a reasonable doubt that Bagdasarian had the subjective intent to threaten a presidential candidate." *Id.* at 1123. And in *United States v. White*, 670 F.3d 498 (4th Cir. 2012), the Fourth Circuit, in the pertinent part of its decision, upheld a judgment of acquittal entered by the district court after a jury conviction on a § 875(c) count. The defendant had posted on neo-Nazi websites statements that "someone [should] do it to"—*i.e.*, firebomb the house of—a particular civil-rights lawyer; that the lawyer "should be drug [sic] out into the street and shot"; and that the lawyer "is an enemy, not just to the white race but of all humanity and he

must be killed." *Id.* at 513. The Circuit held that, although those statements "could have amounted to a threat" had the "context" surrounding the parties' history or the defendant's control over "someone" poised to carry out the threat been different, they fell short of "true threats" under the "circumstances" established by the evidence at trial. *Id.*

*Bagdasarian* and *White* are inapposite because each turned on the sufficiency of the evidence at trial. At this pretrial stage, however, the Court cannot consider "the sufficiency of the evidence that the government is likely to offer at trial," *Grasso*, 585 F. Supp. 3d at 488, since this is not the rare case in which the Government has fully proffered what its trial evidence will be. At trial, Alexander will be at liberty to pursue relief on grounds of evidentiary insufficiency, after the close of the Government's case, *see* Fed. R. Crim. P. 29(a), or after a guilty verdict, *see id*. Rule 29(c), and to pursue the same arguments on appeal. The Court cannot prejudge whether, as in *Bagdasarian* and *White*, the assembled evidence would preclude a reasonable jury from finding Alexander's communication to constitute a "true threat" outside the scope of the First Amendment.

Finally inapposite is *United States v. Dennis*, 132 F.4th 214 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 837 (2025), *reh'g denied*, 146 S. Ct. 1592 (2026). The Second Circuit there reversed a cyberstalking conviction, holding that a reasonable jury could not have found the defendant's statement, "I will find you," to "implicitly threaten[]" the victim "with violence" because, in its entirety, the message read: "Heading to breakfast shortly. Pls save me a seat. I will find you." *Id.* at 234. *Dennis*, as Alexander notes, supports that "language that might appear ominous in isolation must be evaluated in the context of the complete communication." Mot. at 7. She argues that her message to the victim, read in context, merely connotes that the "whiteness" of the victim's husband "'will [not] protect' [her] children from a nebulous and unspecified harm"

and "predict[s]" that the "children will not be insulated from the harsh governmental policies associated with their father's work." *Id*. at 6.

Again, without an evidentiary record, it is premature for the Court to assess whether, as Alexander argues, her message could only be understood as non-threatening commentary protected by the First Amendment. As in *Dennis*, that argument "reduces to a question of evidentiary sufficiency, *i.e.*, was the evidence sufficient to prove 'true threats' falling outside First Amendment protection?" 132 F.4th at 227. Conceivably, the trial evidence may support that Alexander "engaged solely in protected speech . . . [b]ut this is a matter of proof that cannot be resolved at this stage of the proceedings." *United States v. Larson*, 807 F. Supp. 2d 142, 165–66 (W.D.N.Y. 2011), *aff'd sub nom. United States v. Kirsch*, 903 F.3d 213 (2d Cir. 2018); *see also United States v. Ward*, No. 24 Cr. 401, 2025 WL 601312, at *4 (E.D.N.Y. Jan. 28, 2025) ("Should the jury return a guilty verdict at trial, Ward may move under Rule 29 to argue that no rational trier of fact could have found beyond a reasonable doubt that his statement constituted a true threat . . . . But it is premature to pass on that question now.").

The Court accordingly denies Alexander's motion to dismiss on the ground that the message on which the § 875(c) charge is based necessarily did not constitute a "true threat" and hence was constitutionally protected. That is, in the first instance, a question for the jury. This ruling is without prejudice to Alexander's right—as in the cases on which she principally relies—to renew her challenge at or after trial, on a full evidentiary record.

### B. Alexander's Argument Based on the Indictment's *Mens Rea* Allegation

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see also Grasso*, 585 F. Supp. 3d at 487–88. Because "federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails

to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (cleaned up). An indictment is sufficient if it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013); *see also United States v. Kelly*, 462 F. Supp. 3d 191, 195 (E.D.N.Y. 2020). This standard is "not onerous." *United States v. Ho*, No. 25 Cr. 3, 2026 WL 1535022, at *3 (S.D.N.Y. June 1, 2026).

The statute Alexander is charged with violating prohibits "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c). To establish a violation of § 875(c), the Government must prove beyond a reasonable doubt three elements: (1) "the defendant intentionally transmitted a communication in interstate commerce," (2) "the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury," and (3) "the defendant transmit[ted] [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *United States v. Lemke*, No. 21 Cr. 100, 2021 WL 3195470, at *2 (S.D.N.Y. July 28, 2021). An indictment charging a violation of § 875(c) must contain "an allegation as to the Defendant's subjective intent" or "sufficient factual information for the subject[ive] intent to be inferred." *Id.*

Alexander argues that the Indictment here is facially insufficient because it ostensibly "fails to allege the requisite *mens rea* element." Mot. at 9–10. She contends that the Indictment "fails to allege that [she] had any subjective understanding that the [communication] could be

perceived as threatening in nature." *Id.* at 10. The Government counters that the Indictment adequately alleges the *mens rea* element. Opp'n at 7.

The Government is correct, as the Indictment contains factual content on which to infer an intent on Alexander's part to threaten injury. It tracks the language of the statute, including the allegation that Alexander "knowingly transmitted in interstate and foreign commerce communications containing threats to injure the person of another." Dkt. 22. And its "to wit" clause contains factual allegations particular to Alexander. It alleges that she "sent threatening electronic messages from New York, New York over a particular social media application to another individual ("Victim-1") outside of New York State, in which ALEXANDER threatened to kill and injure Victim-1's children." *Id.*

Measured against the case law applying Rule 7(c)(1), the Indictment contains sufficient factual allegation on which to infer Alexander's subjective intent to threaten injury. *See, e.g.*, *Lemke*, 2021 WL 3195470, at *2 (§ 875(c) indictment sufficiently alleged *mens rea* where each count "state[d] that Defendant 'knowingly and intentionally' transmitted a communication containing a threat to kidnap a person"); *United States v. Khan*, 937 F.3d 1042, 1049–50 (7th Cir. 2019) (indictment sufficiently alleged *mens rea* where it alleged defendant "transmit[ted] in interstate commerce a communication containing a threat to injure the person of another" and identified content of threats). *Cf. Carrier*, 672 F.2d at 303 (indictment that "without embellishment simply tracked the language of 18 U.S.C. § 871(a) that makes it a crime 'knowingly and willfully' to make 'any threat to take the life of or to inflict bodily harm upon the President of the United States'" was "valid on its face"). Indeed, cases routinely go to trial on the basis of functionally identical indictments bringing § 875(c) charges. *See, e.g.*, *Segui*, 2019 WL 8587291, at *2 (resolving evidentiary motions *in limine* before trial on indictment alleging

that defendant "did knowingly and intentionally transmit in interstate commerce a communication containing a threat to injure the person of another"); *United States v. Garnes*, No. 22 Cr. 487, 2025 WL 1940326, at *1 (E.D.N.Y. July 15, 2025) (denying motion for acquittal after trial on indictment alleging defendant "did knowingly and willfully transmit in interstate commerce one or more communications containing one or more threats to injure the person of another, to wit: communications threatening employees of the New York State Department of Labor.").

*United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015), on which Alexander relies, is not to the contrary. The Eleventh Circuit there directed the dismissal of an indictment that "failed to allege [the defendant] subjectively intended to convey a threat to injure others." *Id.* at 1294. The indictment charged that:

> On or about November 10, 2010, in Broward County, in the Southern District of Florida, and elsewhere [Martinez] did knowingly transmit in interstate commerce a communication, that is an email form response, to WFTL Radio, which communication contained a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

*Id.* The Eleventh Circuit had initially upheld the indictment as sufficient because it satisfied Circuit precedent that § 875(c)'s *mens rea* requirement did not require appreciation of the threatening nature of the communication. *See id.* at 1295. However, while Martinez's certiorari petition was pending, the Supreme Court held that § 875(c)'s "mental state requirement" must "apply to the fact that the communication contains a threat." *Elonis v. United States*, 575 U.S. 723, 737 (2015). The Supreme Court vacated and remanded with instructions to the Eleventh Circuit to reconsider in light of *Elonis*. *See Martinez*, 800 F.3d at 1294. On remand, the Eleventh Circuit held that the indictment was defective, because it neither alleged Martinez's *mens rea* nor contained facts from which her intent could be inferred, but instead alleged "only that a reasonable person would regard Martinez's communication as a threat." *Id.* at 1295.

The Indictment here does not have that defect. It alleges that Alexander "sent threatening electronic messages . . . to another individual . . . in which [she] threatened to kill and injure Victim-1's children." Dkt. 22. That allegation supplies a sufficient factual basis from which to infer Alexander's intent to threaten. The Court therefore denies Alexander's motion to dismiss the Indictment for failure to comply with Rule 7(c)(1).

**CONCLUSION**

For the foregoing reasons, the Court denies Alexander's motion to dismiss the Indictment. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 29. As scheduled, the case will proceed to trial on January 19, 2027.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 9, 2026
New York, New York